**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**KAREN NICOLE SMITH,**

    Plaintiff,

v.    Civil Action No. 2:11-CV-32
     (BAILEY)

**MICHAEL J. ASTRUE,
Commissioner of Social
Security,**

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

**I.    Introduction**

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Doc. 16] and the plaintiff's Objections thereto [Doc. 17]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to understake a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. See ***Webb v. Califano,*** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

II.     **Background**

Smith originally filed for disability Insurance on September 25, 2007, alleging disability since December 31, 2002. (Tr. 143). The application was denied on November 27, 2007, and on reconsideration on February 19, 2008. (Tr. 88-89, 101). The Claimant requested a hearing before an ALJ and received yet another adverse decision, finding that she was not under a disability within the meaning of sections 216(I) and 223(d) of the Social Security Act through March 31, 2005, the last date insured, and that during the relevant time period, Claimant retained the residual functional capacity ("RFC") to perform light exertional work that required no high production rates or quotas; no more than occasional contact with co-workers, supervisors, or the general public; and permitted for a fifteen minute break in the morning and afternoon and, if caught up on work, an additional ten minute break in the morning and afternoon, with no more than five breaks in an eight-hour work day. (Tr. 16-18, 159). The ALJ also found that her RFC would not have prevented her from performing her past work as a secretary or bookkeeper. (Tr. 22). In light of the above, the Claimant requested review by the Appeals Counsel, but was denied. (Tr. 1, 10). Having exhausted her administrative remedies, Claimant now seeks review in this Court.

On April 19, 2011, the plaintiff filed her Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition. On August 1, 2011, the plaintiff moved for Summary Judgment [Doc. 12]. In response, the defendant moved for Summary Judgment on August 29, 2011 [Doc. 14]. In support of her motion, the plaintiff asserts two claims of error on the part of the Administrative Law Judge ("ALJ"). On cross motion for summary judgment, the

defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff argues that the ALJ erred in failing to determine Claimant's ability to work on a regular and continuous basis as required by the Commissioner's regulations ([Doc. 16] at 10). Instead, the plaintiff asserts that the ALJ failed to adequately determine the frequency with which she was required to use the restroom facilities [Doc. 17]. In response, the defendant contends that the ALJ reasonably accounted for Claimant's limitations arising from her bladder impairment when assessing her RFC. [Doc. 16].

Second, the plaintiff alleges that the ALJ conducted an improper assessment of credibility in formulating her residual functional capacity ("RFC"). Id. In particular, the plaintiff argues that the ALJ improperly relied upon past employment as a babysitter, bookkeeper, and secretary. Plaintiff argues these positions were part-time in nature, which does not constitute evidence that she can perform substantial gainful activity. The defendant responds that the ALJ reasonably found that Claimant's subjective complaints of pain and functional limitations were not credible. Id.

On August 31, 2011, Magistrate Judge Seibert rejected both of the plaintiff's claims of error and recommended that the plaintiff's motion [Doc. 12] be denied, that the defendant's motion [Doc. 14] be granted, and that the ALJ's decision be affirmed. ([Doc. 16] at 2). First, the magistrate judge concluded that "the record is fully and fairly developed on the issue of whether Claimant is able to work on a regular and continuous basis even with her urinary frequency, and it is fully developed as to why the ALJ discredited Claimant's statements as to the frequency with which she needs to use the restroom." Id. at 13-14. Specifically, the magistrate judge determined that the ALJ noted that Claimant

testified that her symptoms improved after beginning to take a medication called Elmiron, and the ALJ gave weight to this evidence. Id. at 14. Further, the magistrate judge noted that although Claimant went to several doctors with various urinary problems, there is no evidence that the Claimant ever complained to her doctors that she needed to urinate every ten to fifteen minutes; in the absence of such evidence, the magistrate concluded the ALJ could properly discredit her testimony to the contrary. Id. In addition, the ALJ noted that Claimant's part-time work at a daycare prior to being prescribed Elmiron "supports her ability to work at the [RFC] which with the additional limitations fully accommodates her symptoms relating to this impairment." Id. Therefore, the magistrate judge recommends there was no need for the ALJ to factor a higher frequency of bathroom breaks into his RFC analysis. As such, the magistrate judge found the ALJ's determination as to Claimant's RFC and his determination that she could return to her past employment as a secretary or bookkeeper is supported by substantial evidence. Id.

Next, the magistrate judge held that the ALJ had properly determined that the Claimant's statements concerning her symptoms were not fully credible. Id. In particular, the magistrate judge found that the ALJ appropriately followed the two-step process required to determine whether a person is disabled by pain or other symptoms; that is, first, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged; and second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. **Craig v. Chater**, 76 F.3d 585 (4th Cir. 1984). The ALJ concluded the Claimant retained the ability to perform a limited range of light work. He found that while she suffered from medically

4

determinable impairments capable of causing "some of the alleged symptoms," the statements as to the severity and frequency of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. The magistrate judge noted that the ALJ's credibility determination resulted from a lengthy consideration of the entire record, including medical evidence, hearing testimony, and the Claimant's daily activities during the relevant time period. "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness," the reviewing court "will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" **Powers v. Apfel**, 207 F.3d 431, 435 (7th Cir. 2000) (quoting **Herr v. Sullivan**, 912 F.2d 178, 181 (7th Cir. 1990)). Finding no such patent error, the magistrate judge opined that the ALJ's credibility determination shall stand.

### III. Applicable Standards

#### A. Judicial Review of an ALJ Decision

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. See 42 U.S.C. § 405(g). 'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.' **Richard v. Perales**, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' See **Perales**, 402 U.S. at 401, 91 S.Ct. at 1427 (citing **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 216 (1938)). Substantial evidence . . . consists of more than a mere

scintilla of evidence but may be somewhat less than a preponderance . . .. Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. See **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966); **Snyder v. Ribicoff**, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979). 'This Court does not find facts or try the case *de novo* when reviewing disability determinations.' **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976)." **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B.   Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One:   Determine whether the claimant is engaging in substantial gainful activity;

Step Two:   Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Pt. 404, Subpt. P, App. 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four:   Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five:   Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520 (2011).

**IV.     Discussion**

In her Objections [Doc. 17], timely filed on September 9, 2011, the plaintiff takes issue with the analysis of the magistrate judge.  This Court will address these objections as they relate to each of the plaintiff's claims of error discussed above.  In so doing, the Court will determine, *de novo*, whether either claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

   **A.     The ALJ's Determination Regarding Claimant's RFC**

In her Objection, the plaintiff argues that the magistrate judge's recommendation is legal error in his conclusion that the ALJ's determination of her RFC was correct.  The Administrative Law Judge concluded that the claimant could perform work at the light level of physical exertion with the following restriction: "allows for a 15-minute break in the morning and the afternoon and if caught up with work an additional 10-minute break in the morning and afternoon, with no more than five breaks in an eight-hour workday." (Tr. 18, Finding No. 5).  Thus, the plaintiff argues that the ALJ found that the claimant would need up to five breaks in an eight-hour workday.

Eugene Czuczman, the vocational expert at the hearing, testified that if the claimant were required to utilize all five of the breaks indicated in the ALJ's RFC assessment, including times in which the employee was not caught up, "and they are taking those additional breaks and they're doing it consistently, say three times out of the week, within a couple of weeks, they are going to be fired." (Tr. 81).

Residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20

7

C.F.R., Part 404, Subpart P, Appx. 2, § 200.00(c) (2010).  When determining residual functional capacity, the Commissioner must evaluate the claimant's "ability to work on a sustained basis."  20 C.F.R. § 404.1512(a) (2010).

Therefore, plaintiff's Objection suggests that based on the testimony of the vocational expert ("VE"), the ALJ was required to decide how frequently Smith would be required to have all five bathroom breaks per day.  If this were to occur regardless of whether she was caught up with her work at a frequency of three times per week, the vocational expert testified that she would be fired.  Therefore, the plaintiff argues she would not be able to perform work on a regular and continuing basis.

The Claimant also objects to the magistrate judge's rejection of her contention that the ALJ's conclusion that her testimony was not credible is not supported by substantial evidence.  Plaintiff asserts that the ALJ concluded only that "[t]he claimant's medically determinable impairments could have reasonably been expected to cause some of the alleged symptoms during the time period in question; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 19).

Based on the above finding, the plaintiff asserts that the medical impairments could cause some of her symptoms without further identification, and the Court has no way to know which symptoms were reasonably expected to result from such impairments.  Therefore, the plaintiff concludes that there is no way to evaluate the ALJ's credibility finding.

In addition, the plaintiff objects that the ALJ improperly relied on the part-time work

at a day care from February 2004 to March 2005, two to three days per week, and babysitting in her home from March to June 2005, to discount her testimony concerning the severity of her headaches and her need to frequently use the bathroom. Plaintiff argues the part-time day care and babysitting work was not sufficient to be considered substantial gainful activity, as the ALJ acknowledged. (Tr. 16, Finding No. 2). The plaintiff cites **Smith v. Heckler**, 782 F.2d 1176 (4th Cir. 1986), to show that the ability to perform work part-time at a level that does not constitute substantial gainful activity is not evidence that the claimant can perform substantial gainful activity.

Finally, the plaintiff objects that the ALJ found she stopped using depo provera to relieve her migraine headaches due to concerns about weight gain. (Tr. 20). Instead, she asserts the treatment records of treating physician shows that she stopped taking depo provera because she had been diagnosed with osteogenesis imperfect. (Tr. 283).

Based upon the above objections, the plaintiff requests that the magistrate judge's recommendation be rejected, that the decision of the Commissioner should be reversed, and that this matter should be remanded to determine how often the plaintiff would be required to use the restroom, regardless of whether she was caught up on her work. Finally, the plaintiff asserts the ALJ should be directed to make a new and specific credibility determination.

The plaintiff further avers that the ALJ failed to properly consider whether the combined effect of her impairments medically equaled one of the listed impairments. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this

Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the combined effect of the plaintiff's impairments.

Step three requires an ALJ to determine whether a claimant's impairments equal the level of severity of an impairment described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment"). A claimant has a listed impairment if he or she has an impairment that meets the requirements of a listing or is medically equivalent to a listed impairment. See 20 C.F.R. §§ 404.1525, 404.1526. An ALJ will find that a claimant's "impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement (see § 404.1509)." 20 C.F.R. § 404.1525(c)(3). Alternatively, an ALJ will find that a claimant's "impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Medical equivalence can be found based upon the combined effect of a claimant's impairments. Specifically, if a claimant has "a combination of impairments, no one of which meets a listing . . . , [an ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [an ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing." 20 C.F.R. § 1526(b)(3).

Here, the plaintiff does not argue that she has one particular impairment that meets or medically equals a listed impairment. Instead, the plaintiff argues that the ALJ erred by not considering whether a combination of her impairments medically equaled a listed impairment. More specifically, the plaintiff argues that the ALJ erred by ignoring medical

evidence that she suffers from headaches. This Court disagrees.

First, the ALJ explicitly stated in his factual findings that he considered the combination of all impairments. Specifically, the ALJ appropriately followed the two-step process required to determine whether a person is disabled by pain or other symptoms; that is, first, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged; and second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. ***Craig v. Chater***, 76 F.3d 585 (4th Cir. 1984). The ALJ concluded the Claimant retained the ability to perform a limited range of light work. He found that while she suffered from medically determinable impairments capable of causing "some of the alleged symptoms," the statements as to the severity and frequency of her symptoms were not credible to the extent they were inconsistent with the RFC assessment.

The magistrate judge noted that the ALJ's credibility determination resulted from a lengthy consideration of the entire record, including medical evidence, hearing testimony, and the Claimant's daily activities during the relevant time period. It is well settled that "[b]ecause hearing officers are in the best position to see and hear the witnesses and assess their forthrightness," the reviewing court "will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" ***Powers v. Apfel***, 207 F.3d 431, 435 (7th Cir. 2000) (quoting ***Herr v. Sullivan***, 912 F.2d 178, 181 (7th Cir. 1990)). Important to this determination, this Court notes that although the Claimant went to several doctors alleging various urinary problems, there is no evidence that the Claimant ever

complained to her doctors regarding her alleged need to urinate every ten to fifteen minutes, and with such an absence, the ALJ could discredit her testimony to the contrary. (Tr. 267, 317, and 648). The Claimant attempts to categorize the ALJ's findings as "boilerplate language" instead of specific reasons for his finding on credibility. To the contrary, while the Claimant attempts to minimize the ALJ's credibility assessment, the record reflects the ALJ spent nearly three pages of findings deliniating evidence supporting his credibility finding that the Claimant's statements as to the severity and frequency of her symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Tr. 19-22). Thus, finding no such patent error, the magistrate judge opined that the ALJ's credibility determination shall stand. Likewise, this Court will not disrupt these findings.

"The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" **Bledsoe v. Barnhart**, 165 Fed.Appx. 408, 411 (6th Cir. 2006). Based upon the above, this Court finds that the ALJ complied with 20 C.F.R. § 404.1526. That the ALJ did not spell out every fathomable consideration is not reversible error. *See* **Bledsoe**, 165 Fed.Appx. at 411 ("The ALJ did not err by not spelling out every consideration that went into the step three determination.").

Therefore, this Court cannot find unsupported by substantial evidence the ALJ's decision that the combined effect of the plaintiff's impairments did not medically equal a listed impairment. Accordingly, this Court agrees with the magistrate judge that the ALJ did not err in his consideration of the plaintiff's impairments at step three.

### B. ALJ's Credibility Analysis

In her motion, the plaintiff alleges that the ALJ improperly relied upon her daily activities and lack of medical treatment or medications to discredit her subjective complaints. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

> An ALJ's credibility analysis is a two-step process:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . ..
>
> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

SSR 96-7p; 1996 WL 374186, *2.

> Such considerations the ALJ may consider include:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 1996 WL 374186, *3.

This Court finds no error in the ALJ's consideration of the plaintiff's daily activities. In so doing, this Court notes that such a consideration is explicitly contemplated by the first factor listed above. See SSR 96-7p; 1996 WL 374186, *3. In addition, this Court finds no indication of the type of selective citation condemned in **Hines v. Barnhart**, 453 F.3d 559 (4th Cir. 2006). In **Hines**, the Fourth Circuit affirmed a district court which found that an ALJ erred when he selectively cited evidence concerning the daily activities of a claimant suffering from sickle cell disease. **Id.** at 565-66. In particular, the ALJ cited that the claimant raked his yard and cut his grass, occasionally did repairs such as fixing a door knob, and was active in his church as a deacon. **Id.** at 566. The Court found that this was selective citation because the ALJ improperly ignored the claimant's testimony that he "[r]akes the yard or tries mowing the grass [but] when [he] start[s] to feel bad [he] stop[s] and finish[es] up – maybe tr[ies] to finish up the next day . . .." **Id.** The Court found further selective citation in that the claimant had actually testified that he "probably" would "try to fix . . . a doorknob" and that he attends church only two or three times a month. **Id.** Unlike in **Hines**, the plaintiff has failed to provide evidence of any significant qualifications to the daily activities relied upon that the ALJ ignored to discredit the plaintiff's subjective complaints. Moreover, this case is also distinguishable from **Hines** in that the ALJ here relied upon the plaintiff's lack of medical treatment in addition to her daily activities.

For these reasons, this Court finds that substantial evidence supports the ALJ's credibility determination. Accordingly, this Court agrees with the magistrate judge that the

ALJ appropriately considered the plaintiff's lack of credibility concerning the intensity, persistence, and limiting effects of her ability to do basic work activities.

### C. ALJ's Consideration of Treating Source Opinions

#### 1. Eugene Czuczman's Opinion

In her motion, the plaintiff asserts that the ALJ failed to properly consider the treating source opinion of Eugene Czuczman, the vocational expert at the hearing. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of Eugene Czuczman's opinion.

In evaluating the opinions of treating sources, an ALJ must generally give more weight to the opinion of a treating physician because the physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F.Supp. 53, 55 (W.D. Va. 1996); see also 20 C.F.R. § 404.1527(d)(2).

If the ALJ determines that a treating physician's opinion should not be accorded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency between the

opinion and the record as a whole, (5) whether the treatment source is opining within his or her specialization, and (6) any other factors which tend to support or contradict the opinion.  In addition, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 404.1527(d)(2).  In this regard, Social Security Ruling 96-2p provides that those decisions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, *5.

Therefore, this Court cannot conclude that the ALJ's decision to attribute little weight to the VE's opinion is unsupported by substantial evidence.  Accordingly, this Court agrees with the magistrate judge that the ALJ properly considered the opinion.

The plaintiff argues that the ALJ committed reversible error by not more specifically discussing Eugene Czuczman's opinion and stating reasons for rejecting his conclusions. This Court disagrees.

The regulations define a claimant's RFC as "the most [a claimant] can still do despite [his or her] limitations."  See 20 C.F.R. § 1545(a)(1).  In assessing a claimant's RFC, an ALJ will consider "all of the relevant medical and other evidence," such as "any statements about what [the claimant] can still do that have been provided by medical sources . . .." § 404.1545(a)(3). This includes statements about the claimant's ability to "perform certain physical demands of work activity, such as sitting, standing, [and] walking . . .." § 404.1545(b).  Upon formulating a claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy that have requirements which the claimant is able to meet despite his or her RFC.  See § 404.1566(b).  In so determining, the

16

ALJ may use the services of a vocational expert, who may offer expert testimony in response to a hypothetical question about whether a person with the claimant's RFC can meet the demands of his or her past relevant work or other suitable work in the national economy.  See §§ 404.1560(b, (c), and 404.1566(e).  In the Fourth Circuit, an ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." ***Koonce v. Apfel***, 1999 WL 7864, *5 (4th Cir. Jan. 11, 1999) (citing ***Martinez v. Heckler***, 807 F.2d 771, 774 (9th Cir. 1986)).  Here, the VE concluded that if the plaintiff was required to take five (5) breaks to use the restroom during an eight (8) hour workday, she would be fired.  (Tr. 81).  This Court, the Magistrate Judge, and the ALJ, all seem to agree this contention is completely unfounded and not uncommon.  Accordingly, this Court agrees with the magistrate judge that the ALJ properly accounted for the same.

## IV.     Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 16]** should be, and hereby is, **ADOPTED**.  Further, the plaintiff's Objections **[Doc. 17]** are **OVERRULED**.  Therefore, this Court **ORDERS** that the Plaintiff's Motion for Summary Judgment **[Doc. 12]** is hereby **DENIED**, and the Defendant's Motion for Summary Judgment **[Doc. 14]** is hereby **GRANTED**.  As such, the decision of the ALJ is hereby **AFFIRMED**.  Accordingly, the Court hereby **ORDERS** that this matter be **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: April 24, 2012.

> JOHN PRESTON BAILEY
> UNITED STATES DISTRICT JUDGE